**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                        Case No. 3:16-cr-92-J-39PDB

**ELIZABETH M. JORDAN**
_____/

**DEFENDANT'S SUBMISSION OF ADDITIONAL EVIDENCE AND ARGUMENT AND AUTHORITY IN SUPPORT OF COMPASSIONATE RELEASE**

Elizabeth M. Jordan, through undersigned counsel, submits the following evidence and additional information to supplement Defendant's previously filed pro se motion and exhibits. Defense counsel adopts Defendant's pro se motion and exhibits, insofar as they relate to her husband's medical condition as a basis for her compassionate release. Furthermore, since the filing of Ms. Jordan's pro se motion, Ms. Jordan has subsequently filed for compassionate release based on her own medical condition.[1] That request for compassionate release was filed with the Bureau of Prisons on December 6, 2019. To date, Ms. Jordan has not received any response to that request. Therefore, Defense counsel also adopts Ms. Jordan's pro se motion and exhibits as they relate to her own health and medical conditions. Defense counsel now submits additional arguments and authority in support of Ms. Jordan's compassionate release claims.

**I.     Introduction**

On September 9, 2019, Ms. Jordan filed her pro se motion for Compassionate release under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act of 2018 (Doc. 157).

---

[1] See attached Exhibit E.

Additional pro se pleadings and exhibits (Docs. 158, 159) followed up the initial filing. In response, and by Order of this Court (Doc. 160), the United States filed its response in opposition to compassionate release on December 12, 2019 (Doc. 162).

Following the filing of Ms. Jordan's motion for compassionate release, the Court appointed the Federal Defender's Office (Doc. 160). The matter is now ripe for the Court's consideration.[2] Undersigned counsel, having reviewed all the previous filings and having met with Ms. Jordan, submits additional information for the Court's consideration.

II. **Grounds**

In order to meet the criteria for compassionate release under the First Step Act of 2018, the Court must first determine, as a preliminary matter, that the defendant is not a danger to the safety of any other person or to the community. USSG §1B1.13(2). Once that determination is made, a defendant can qualify as a result of extraordinary and compelling reasons based on her medical condition, age, family circumstances, or for other reasons. *See* 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13, comment (n.1). Ms. Jordan's motion is based on her medical condition and due to family circumstances based on her husband's diagnosis of end stage renal failure.

The "Medical Condition of the Defendant" category has two prongs, one for defendants with terminal illnesses and the other for those with a debilitating condition. The debilitating

---

[2] Under the First Step Act of 2018, the sentencing judge now has jurisdiction to consider a defense motion for reduction of sentence under 18 U.S.C. §3582(c)(1)(A) when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier [.]" First Step Act of 2018, 603(b), Publ. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

condition prong is applicable to Ms. Jordan's situation. The Sentencing Commission described the eligibility criteria for this category in 2016 when it broadened the criteria. The criteria now includes defendants who are suffering from a serious condition, suffering from a serious functional or cognitive impairment or are experiencing deteriorating health because of the aging process. These prongs are intended to include a wide variety of permanent, serious impairments and disabilities that make life in prison overly difficult for some inmates.

Ms. Jordan contends that her own medical condition is well documented. Ms. Jordan's PSR, which was accepted and adopted by the Court at her sentencing hearing, details the various injuries to her back and the nerve damage throughout her right side of her body. The PSR contained verification from Dr. Vicenty of the Jacksonville Spine Center, who verified that Ms. Jordan had been a patient since 2006 and that she had a nerve stimulator device implanted in her back to address her chronic and ongoing treatment needs. Ms. Jordan's condition, caused by an automobile accident, caused chronic pain and difficulty with sitting, walking, or standing for prolonged periods. In fact, Your Honor gave Ms. Jordan an extended report date in order to allow her to have surgery to change the implant before she began her prison term.

Since her incarceration, she has discovered that the Bureau of Prisons medical staff are unable to perform the programming and adjustments necessary for the surgical implant to work properly. Ms. Jordan has been sent out of the BOP for outside medical treatment on one occasion.[3] Doctors at the Ocala Neurosurgical Center saw her. Dr. Oliver's report indicated

---

[3] See Exhibit F, which includes Ms. Jordan's attempts at requesting treatment from the BOP Medical Staff

3

that reprogramming of the stimulator was "better left to the stimulator representatives who handle programming" and that it was not something that he could perform. These problems appear to be exacerbated by the metal beds that inmates are provided for their bunks. Ms. Jordan has made several requests for additional mattresses in order to avoid the metal-to-metal contact between her bunk and her implant but has not received any relief to date. This situation makes her very painful, daily life even worse. As Ms. Jordan stated in her request to the BOP for compassionate release, she has not been able to have any automatic updates to her medical implant since the day of her report to prison. She suffers from burning sensations and bruising throughout her back and shoulders, along with painful muscular knots that impede her mobility. The BOP medical staff have indicated that they cannot adequately treat her within their system. This is not a medical condition from which she is expected to recover. For this reason alone, Ms. Jordan should be released on compassionate release grounds.

Furthermore, news articles[4] detail that an outbreak of Legionnaire's disease has now been publicly disclosed. This is an infectious disease that is carried in water droplets and to which someone in Ms. Jordan's medical condition may be particularly susceptible.

Ms. Jordan is also qualified for compassionate release based on the incapacitation of her spouse since she is the only available caregiver for him. As amply documented by the medical records already submitted by Ms. Jordan, Mr. Shawn Jordan has been diagnosed with end stage renal failure. Defense counsel has attached additional records from the Mayo Clinic,

---

as well as an evaluation from an outside medical center. Ms. Jordan's full medical records are available to the Court upon request.
[4] See attached Exhibit G.

where Mr. Jordan is now receiving dialysis three times a week and is being treated by their Nephrology Division.[5] The full records may be provided to the Court upon request. Mr. Jordan currently lives alone and has no other family members to assist him. He has been unable to keep up with his household and has difficulty taking care of his own daily needs. He rises as early as 3:00 a.m. on the days that he has to travel to his dialysis. He is slow moving and needs the extra time to get himself together. He is picked up by a Community bus and taken to the Mayo Clinic, in a trip that can take up to 2 hours depending on the number of other pickups and drop-offs being made that morning.[6] The dialysis itself takes 3 – 4 hours each visit. At the end of each visit, he has to travel alone back to his empty home.

The medical staff at Mayo Clinic have discussed the possibility of at home dialysis with Mr. Jordan. Dr. Mao's letter to the Court outlines the two types of at home dialysis.[7] Each would allow Mr. Jordan to increase his dialysis through at-home treatment. This would allow for improved quality of life while he awaits news on whether he will be placed on a transplant list. As Dr. Mao's letter further explains, Mr. Jordan's ability to perform at-home dialysis is improved if he has a caregiver to assist him and to provide a safeguard against any ill side effects or emergencies. Furthermore, it is unlikely that Mr. Jordan would actually be approved for a transplant without having a caregiver in the home. As Dr. Mao's letter explains, Mr. Jordan has a limited life expectancy if he does not receive a transplant.

Defense counsel has attached additional letters from Ms. Jordan's children.[8] These letters

---

[5] See attached Exhibit A.
[6] See Exhibit I video of Mr. Jordan's commute to and from dialysis.
[7] See attached Exhibit B.
[8] See attached Exhibit D.

set out in greater detail their inability to act as caregivers for their father. The Government argues that it is merely "inconvenient" for them to act as caregivers. These letters set out the challenges each of them face and the many demands on them from having to work multiple jobs to support their families while also caring for children and loved ones. One daughter works 7 days a week while raising five children. Another reveals that she is helping to care for her nephews and a grandmother who is suffering with Alzheimer's disease while working full-time. A third works and raises three children, one of whom she characterizes as a special needs child. Mr. Jordan's children love him and wish they could be the caregiver he needs. Unfortunately, that is just not possible. The Defense respectfully submits that the question before the Court is not whether others could act as caregivers, but rather, whether there are any other caregivers, no matter the reason. It is not within the jurisdiction of the Court to order others to help care for Mr. Jordan. It is only to decide whether, given his life-threatening medical condition, his wife should be released to help care for him.

### III. **Proposed Release Plan**

If the Court grants Ms. Jordan's motion for compassionate release and she is allowed to return home, she will reside with her husband at their home. She will be under the supervision of the United States Probation Office for a term of supervised release for one year.[9] She has prepared for her release through numerous educational and vocational courses. She has not

---

[9] "For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." USSG §1B1.13, commentary note 2.

6

received any disciplinary reports during her incarceration. She has a stable home and a stable and supportive family to whom she will return.[10]

### IV. **Request for Hearing and Oral Argument**

Ms. Jordan requests that the Court conduct an evidentiary hearing in this matter. This will allow the Court to address any outstanding questions and issues and allow counsel to argue their respective positions.

### V. **Conclusion**

Elizabeth Jordan meets all the criteria for compassionate release. If released, she will return to her husband of many years, to the home they lived in before her incarceration and to the supervision of the United States Probation Office. She was convicted of a non-violent offense and poses no danger to the safety of the community. Her release on compassionate grounds will improve her husband's prognosis and potentially save his life with a transplant. It will allow her to live life without constant pain and with appropriate medical care for her own chronic medical conditions. Ms. Jordan has served 15 months of a 21 month sentence and a release to her home, instead of remaining incarcerated or being sent to a halfway house, would serve the interests contemplated by the Compassionate Release laws and would not do anything to endanger the community.

---

[10] See attached Exhibit H.

DATED this 31st day of January, 2020.

                                        JAMES T. SKUTHAN
                                        ACTING FEDERAL DEFENDER

                                        s/ *Waffa J. Hanania*
                                        _____
                                        Waffa J. Hanania
                                        Assistant Federal Public Defender
                                        Florida Bar No. 0888631
                                        200 West Forsyth Street, Suite 1240
                                        Jacksonville, FL 32202
                                        Telephone: (904) 232-3039
                                        Fax: (904) 232-1937
                                        Waffa_Hanania@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of January, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                        s/ *Waffa J. Hanania*
                                        _____
                                        Waffa J. Hanania
                                        Assistant Federal Public Defender