**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                Case No.:    3:16-cr-92-J-39PDB

ELIZABETH JORDAN,

    Defendant.

_____/

## **ORDER**

Defendant Elizabeth Jordan was convicted of one count of aiding and abetting the filing of false tax returns, in violation of 26 U.S.C. § 7206(2), and sentenced to a term of 21 months in prison. (Doc. 120, Judgment). According to the Federal Bureau of Prisons (BOP), she is due to be released from her term of imprisonment on June 28, 2020. This case is before the Court on Ms. Jordan's pro se Motion for Compassionate Release under the First Step Act, Pub. L. No. 115–391, 132 Stat. 5194 (2018). (Doc. 157, Motion). She requests compassionate release for two reasons: (1) her husband was recently diagnosed with end-stage renal failure and he would benefit from her assistance as he undergoes dialysis; and (2) Ms. Jordan is having some problems with a stimulator that was surgically implanted in her lower back to treat "RSD" – reflex sympathetic dystrophy syndrome – which the BOP lacks the ability to repair or adjust. Ms. Jordan submitted two sets of documents in support. (Doc. 158; Doc. 159).

After Ms. Jordan filed the Motion, the Court appointed the Federal Public Defender to assist her and directed the United States to file a response. (Doc. 160, Order Appointing

1

Counsel). The United States responded in opposition. (Doc. 162, Response). With the assistance of counsel, Ms. Jordan filed supplemental argument and exhibits (Doc. 166, Supplemental Argument), to which the United States filed a supplemental response (Doc. 168, Supplemental Response). For the reasons below, the Motion is due to be denied.

## I. Compassionate Release Under the First Step Act

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, § 3582(c) provides in relevant part:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> **(i)** extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Modification of a defendant's sentence under this statute is commonly referred to as "compassionate release." See Orlansky v. FCI Miami Warden, 754 F. App'x 862, 864-66 (11th Cir. 2018).

Pursuant to its authority under § 3582(c), the United States Sentencing Commission has promulgated a policy statement governing the circumstances when compassionate release is warranted. See U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)**     **(A)** Extraordinary and compelling reasons warrant the reduction; or
>
>        **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

The commentary provides that "extraordinary and compelling reasons" may exist based on a medical condition of the defendant, the age of the defendant, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, App. Note 1. As relevant here, these circumstances are defined as follows:

> **(A) Medical Condition of the Defendant.—**
>      …
>      **(ii)** The defendant is--
>
>          **(I)** suffering from a serious physical or medical condition,
>
>          **(II)** suffering from a serious functional or cognitive impairment,
>
>          or
>
>          **(III)** experiencing deteriorating physical or mental health because of the aging process.
>
>      …
>
> **(C) Family Circumstances.--**
>
> **(i)**     The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> **(ii)**     The incapacitation of the defendant's spouse or registered partner

3

> when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Id., App. Note 1(C)-(D).

BOP Program Statement 5050.50 sets forth further criteria governing eligibility for compassionate release. Regarding inmates whose request is based on a personal medical circumstance, the statement provides in relevant part:

> b. **Debilitated Medical Condition.** RIS [reduction in sentence] consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:
>
> - Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
> - Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

BOP Program Statement 5050.50, § 3.b. For inmates whose request is based on the incapacitation of a spouse, the statement provides in relevant part:

> For these requests, "incapacitation" means the inmate's spouse or registered partner has:
>
> - Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair….
>
> For these requests, the inmate should demonstrate that the inmate is the only available caregiver for the spouse or registered partner, meaning there is no other family member or adequate care option that is able to provide primary care for the spouse or registered partner.

BOP Program Statement 5050.50, § 6.

A BOP Program Statement such as the one above is entitled to at least "some deference," if not regular Chevron[1] deference, as long as it is a permissible construction of the statute. Cook v. Wiley, 208 F.3d 1314, 1319-20 (11th Cir. 2000) (citing, inter alia, Reno v. Koray, 515 U.S. 50, 61 (1995)); Scruggs v. Adkinson, 423 F. App'x 858, 860 & n.1 (11th Cir. 2011). Ms. Jordan does not argue that BOP Program Statement 5050.50 is an impermissible interpretation of 18 U.S.C. § 3582(c)(1)(A) or U.S.S.G. § 1B1.13. As such, the Court owes deference to the Program Statement.

An inmate bears the burden of proving that compassionate release is warranted. Cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (a defendant seeking a sentence reduction under 18 U.S.C. § 3582(c)(2) bears the burden of proving that such a reduction is appropriate). A district court has discretion in deciding whether to authorize compassionate release. See id. (even when a defendant qualifies for a sentence reduction under § 3582(c)(2), "the district court still retains the discretion to determine whether a sentence reduction is warranted.").

**II.     Discussion**

Upon review of the briefs and the record, the Court concludes that Ms. Jordan does not meet the criteria for compassionate release. The United States concedes that Ms. Jordan has exhausted her administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A) – with respect to both her husband's medical condition and her own medical condition. Response at 4; Supplemental Response at 2. However, the United States argues that neither Ms. Jordan nor her spouse are debilitated or incapacitated within the meaning of

---

[1]     Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

5

BOP Program Statement 5050.50. The Court agrees.

First, Ms. Jordan requests compassionate release based on her husband's diagnosis of end-stage renal failure. To qualify as "incapacitated," her husband must have "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is <u>completely</u> disabled, meaning that the spouse or registered partner cannot carry on <u>any</u> self-care <u>and is totally confined</u> to a bed or chair." BOP Program Statement 5050.50, § 6 (emphasis added). To be sure, Mr. Jordan's diagnosis of end-stage renal failure imposes a significant hardship on him. However, the evidence does not establish that her husband qualifies as incapacitated. According to Craig Shapiro, M.D. – Mr. Jordan's nephrologist – Mr. Jordan would "benefit both emotionally and medically in terms of [Ms. Jordan] being able to help transport him and assist him with his treatment plan." (Doc. 157-1 at 10). However, Dr. Shapiro did not state that Mr. Jordan is completely disabled. Indeed, as Ms. Jordan recognizes, Mr. Jordan is able to transport himself to and from dialysis appointments. Supplemental Argument at 4. Additionally, according to one of Mr. Jordan's treatment notes, dated December 2, 2019, he "is coping well overall and tolerating [hemodialysis] without significant symptom burden. He is starting to consider ways to adapt activities he enjoys in order to remain active." (Doc. 166-1 at 4). Mr. Jordan may have "difficulty taking care of his own daily needs," <u>id.</u>, but the evidence submitted does not show that he is incapable of "any self-care and is totally confined to a bed or chair."

Second, Ms. Jordan requests compassionate release based on her own medical condition. To qualify for early release based on a debilitated medical condition, Ms. Jordan must "have an incurable, progressive illness or … have suffered a debilitating injury from

which [she] will not recover." BOP Program Statement 5050.50, § 3.b. The Court presumes that Ms. Jordan's RDS, which resulted from a car accident in 2005, qualifies as a "debilitating injury from which [she] will not recover." But Ms. Jordan must also show that she is either "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair," or "[c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id. The evidence does not show that Ms. Jordan meets either of these criteria. According to Mark Oliver, M.D., a doctor who evaluated Ms. Jordan, she experiences pain and discomfort in her lower back and lower extremities, but she did not describe having any weakness. (Doc. 157-1 at 11-13). Dr. Oliver said nothing about Ms. Jordan being disabled, unable to care for herself, or being confined to a bed or chair for any length of time. Moreover, Ms. Jordan states that she is active in the prison's religious community, that she has taken advantage of her prison camp's reentry program, that she has completed more than 10 classes and seminars, all while "maintaining full-time employment in the inventory department at the UNICOR furniture warehouse." (Doc. 166-1 at 19). These facts indicate that Ms. Jordan does not suffer from a "debilitated medical condition" as defined by BOP Program Statement 5050.50, § 3.b.[2]

Based on the foregoing discussion, the Court determines that Ms. Jordan is not eligible for compassionate release. Although the Court is sympathetic to Ms. Jordan and her husband, neither qualifies as incapacitated or disabled for purposes of 18 U.S.C. §

---

[2] Ms. Jordan also states that there has been an outbreak of Legionnaire's disease at her prison facility. However, this is not a basis for compassionate release. Ms. Jordan has not offered any evidence that her condition renders her more susceptible to Legionnaire's disease than anyone else.

3582(c)(1)(A), U.S.S.G. § 1B1.13, or BOP Program Statement 5050.50. Accordingly, Ms. Jordan's Motion for Compassionate Release (Doc. 157) is **DENIED WITHOUT PREJUDICE**. Ms. Jordan may refile the motion should her or her husband's condition deteriorate between now and her release date.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of April, 2020.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:

Elizabeth Jordan
Counsel of record